IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD E. SKIPTON; and
REVHONEY TEXAS, LLC,

                Plaintiffs,

v.                                            Case No. 19-2682-JWB

REVHONEY, INC.;
JERRY A. BROWN; and
DEBRA D. BROWN,

                Defendants.

## MEMORANDUM AND ORDER

       This matter is before the court on Defendants' motion to dismiss. (Doc. 18.) Plaintiffs have filed a response. (Doc. 20.) No reply has been filed and the time for doing so has expired. Accordingly, the motion is ripe for decision. For the reasons stated herein, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

### I.  Facts

       The following allegations are taken from the amended complaint. (Doc. 5.) In keeping with the standards governing motions to dismiss based solely on the pleadings, all well-pleaded allegations in the amended complaint are assumed to be true for purposes of deciding the motion.

       Plaintiff revHoney [sic] Texas, LLC (hereinafter "revHoney Texas") is a Texas limited liability company with two members: Plaintiff Donald E. Skipton and Bruce Alvin Wallace. Plaintiffs and Wallace are all residents of Texas. Defendant Jerry A. Brown is the president of Defendant RevHoney, Inc., a Kansas corporation. Defendant Debra D. Brown is the treasurer of

RevHoney, Inc.  The Browns are citizens of Kansas or Missouri.  The amount in controversy exceeds $75,000.  (Doc. 5 at 3-4.)

RevHoney, Inc. was formed under the laws of Kansas on November 6, 2009.  It produces, markets, and sells a line of honey-based beverages and snacks, as well as raw honey. In mid-2017, the Browns solicited Skipton regarding potential investment in RevHoney, Inc. During these initial conversations, the Browns extolled the health and growth potential of RevHoney, Inc., and discussed expanding its distribution into Texas. Based on the Browns' representations, Skipton talked about the investment opportunity with his colleague Wallace. Wallace and Skipton met and communicated with the Browns on multiple occasions regarding RevHoney, Inc.'s needs, investment opportunities, and financial health.  After these discussions, a basic agreement was reached, reduced to writing, and signed by Skipton, Wallace, and the Browns. (*Id.* at 6-7.)

The terms of the agreement called for Wallace and Skipton to purchase 59,173 shares[1] in RevHoney, Inc., at a value of $5.00 per share, a cash price of $295,865.00, representing a 19% ownership interest in RevHoney, Inc.; Skipton made a loan to RevHoney, Inc. in an amount of $40,000.00, which Defendants agreed would be converted to equity in RevHoney, Inc.; Skipton and Wallace committed to investing a total of $2 million in RevHoney, Inc. over two years based on mutually agreeable benchmarks, with the $2 million equaling a forty percent (40%) ownership interest in RevHoney, Inc.; and Wallace and Skipton agreed to promote, sell, and distribute RevHoney, Inc.'s products in the Houston, Texas and Austin, Texas metropolitan areas, with their operational expenses becoming part of the $2 million investment.  Skipton and Wallace were

---

[1] According to the amended complaint, in 2012 Jerry Brown filed a form with the Kansas Secretary of State amending the articles of incorporation and allowing RevHoney, Inc. to issue 100,000 shares of common stock without a par value, 100,000 shares of preferred stock with a par value of $1.00, and 150,000 shares of Series A Preferred Stock without a par value. Plaintiffs allege that the Browns failed to register the above-identified shares of preferred stock with the State of Kansas and the Secretary of State. (Doc. 5 at 5.)

authorized to expand the above-described distribution "as business dictates." The agreement stated that Skipton and Wallace "are not distributors with a territory but partners in revHoney [sic] with the goal of expanding revHoney [sic] in general." Wallace and Skipton were also to offer advice in all areas of the business and were empowered to purchase equipment and real estate and to lease the same back to RevHoney, Inc. at market or below market rates, and the value of the assets would be considered part of their $2 million capital investment. (*Id.* at 7-8.)

The Browns said they were not capable of getting RevHoney, Inc. to its distribution goals and accordingly represented they would be recruiting and hiring a third-party, industry-qualified chief executive officer. Based on these representations and agreements, Skipton and Wallace formed revHoney Texas on January 22, 2019, to market and sell RevHoney, Inc.'s products in Texas.  Plaintiffs relied upon the representations and took material steps to perform their obligations under the investment agreement, with Skipton co-signing a loan on behalf of RevHoney, Inc. and loaning it $40,000. Skipton assisted Defendants with financial forecasting and relocation of RevHoney, Inc.'s distribution facility to Missouri, upgrading its production equipment, and hiring a sales and production crew.  (*Id.* at 7-9.)

In February 2019, RevHoney, Inc.'s directors, by unanimous vote of the Browns, converted all the outstanding shares of stock (which were then held exclusively by the Browns) into 1,000 shares of common stock. (*Id.* at 5-6.)  This was done to induce Plaintiffs to invest additional sums in RevHoney, Inc.  (*Id.* at 6.)

On February 22, 2019, revHoney Texas and RevHoney, Inc. executed a Stock Purchase Agreement whereby revHoney Texas agreed to purchase 190 of the 1,000 outstanding shares of common stock of RevHoney, Inc., for an agreed purchase price of $300,000.00, representing a nineteen percent (19%) interest in RevHoney, Inc. Later in 2019, Plaintiffs invested an additional

3

$300,000.00, in RevHoney, Inc., which brought their total ownership to twenty-six percent (26%). (*Id.* at 9.)

Skipton, for the benefit of RevHoney, Inc., entered into multiple long-term production and bottling equipment leases—both as a guarantor and lessee—with North Star Leasing Company. The value of these leases is approximately $440,000.00.  Skipton paid $17,320.00 in multiple cash down payments for these leases. In September 2018, Defendants agreed to assume the lease payments for this production and bottling equipment. (*Id.*)

In April 2019, Plaintiffs conducted a successful marketing event for RevHoney, Inc.'s products in Dripping Springs, Texas. Shortly after the marketing event, Plaintiffs provided Defendants with another injection of capital and loan credit. (*Id.*)  Defendants then "improperly froze Plaintiffs out of RevHoney, Inc., and have repeatedly tried to change the terms of the stock-purchase agreement," and have excluded Plaintiffs from any role in the ongoing operations or management of RevHoney, Inc. (*Id.* at 10.)  On May 6, 2019, Defendants withdrew Plaintiffs' previously-granted access to RevHoney, Inc.'s financials and Quickbooks accounts.  Plaintiffs have made multiple requests for basic financial reports and the financial information to which shareholders are entitled, but Defendants have refused and insist on providing only basic profit and loss statements with no documentary support or explanation.  (*Id.*)

In June 2019, RevHoney, Inc. intentionally ceased making contractually obligated payments on the equipment leases covering production and bottling equipment, which were obtained at the behest of Defendants. Defendants' refusal to make payments has resulted in liabilities of more than $8,000.00 per month being incurred by Skipton and other third-party entities. Defendants have allegedly impeded Plaintiffs' efforts to advertise and distribute RevHoney, Inc.'s products in Texas and to obtain new products for the Texas market. (*Id.* at 11.)

4

In August 2019, the parties held a meeting during which "the original agreement between the Parties was solidified." A few weeks later Defendants tendered draft contracts purporting to represent the Parties' agreement, but the drafts contained new and different terms and attempted to further restrict Plaintiffs' rights as shareholders.  (*Id.*)

Plaintiffs allege that Defendants are mismanaging the company and destroying Plaintiffs' investment and prospects as shareholders.  Plaintiffs allege that RevHoney, Inc. is not growing, and that despite having had approximately $320,000.00 cash on-hand in July 2019, the October 2019 basic financial report indicates a cash on-hand balance of only approximately $85,000.00. For the third quarter of 2019, RevHoney, Inc. reported sales of approximately $46,834.37 but operating expenses of $47,963.37. Defendant RevHoney, Inc.'s recorded gross profit for Q3 of 2019 was $ -74,204.00. By comparison, sales for the first quarter of 2019 were $37,987.371 and sales for the second quarter of 2019 were $66,311.53. (*Id.* at 12.)

As recently as September 25, 2019, the Browns "tried to convert portions of Plaintiffs' investment into a loan" and requested a $700,000.00 loan from Plaintiffs.  (*Id.* at 13.)

Debra Brown admitted she uses personal accounts for purported RevHoney, Inc. business purchases, and then applies for reimbursements from RevHoney, Inc.  According to the complaint, Defendants are refusing to meet their financial obligations and are quickly running out of money with no viable solutions to grave operational and financial problems. (*Id.* at 12.)

On June 17, 2019, Skipton made a formal written demand on RevHoney, Inc.'s board of directors that they comply with their agreement to establish a pro forma business model and business plan; establish sales and revenue benchmarks including a production level of 5,000 cases per month; and employ a qualified, professional chief executive officer. Skipton also formally requested to inspect RevHoney, Inc.'s corporate records pursuant to Kansas Statute § 17-6510(b)

(1)-(2), requested that all company books be produced, and requested delivery of stock certificates reflecting the twenty-six percent (26%) ownership Plaintiffs hold in RevHoney, Inc. Skipton advised that if the demands were not met he would proceed with legal action on the basis of the Browns' fraudulently representing RevHoney, Inc.'s intentions under KSA 60-513(a)(3), and a derivative action for the RevHoney, Inc.'s officers' breach of a fiduciary duty under Kansas Statute § 60-223a. To date, Defendants have not complied with these demands or indicated an intent to acquiesce to the demands. Plaintiffs maintain that additional demands on RevHoney, Inc. and its board of directors would be futile. (*Id.* at 13-14.)

Count 1 is based on the right provided in K.S.A. 17-6510 for stockholders to inspect corporate records. Count 1 alleges that Plaintiffs are shareholders in RevHoney, Inc., that Plaintiffs demanded to review RevHoney, Inc.'s stock ledger, list of stockholders, and other books and records, and that Defendants have refused within five days of the demand to permit the inspection. Count 1 seeks an order compelling Defendants to produce the requested records. (Doc. 5 at 14.)

Count 2 alleges that Defendants fraudulently induced Plaintiffs into a variety of transactions and investments, based on false representations, which caused each Plaintiff to suffer damages. It alleges that the Browns represented that Skipton and Wallace would receive ownership interest in RevHoney, Inc. for their capital investments; that Skipton's efforts to market and distribute RevHoney, Inc.'s products would constitute an equity investment in RevHoney, Inc.; that Skipton would be entitled to advise in all areas of RevHoney, Inc.'s business; that Skipton would be a partner in RevHoney, Inc.'s business; and that Skipton would be entitled to lease equipment and real estate back to RevHoney, Inc. (*Id.* at 15.) In mid-2017 and through 2019, Defendants requested multiple installments of capital investment, which brought Skipton and

revHoney Texas's total cash investment to approximately $600,000.00. Defendants represented that Plaintiffs' total capital investment constituted a 26% ownership in RevHoney, Inc. with all related voting rights and authority, but they are attempting to change the class of stock sold to Plaintiffs to Class B non-voting stock, despite a clear contract to the contrary.  The Browns also represented they would recruit and hire a third-party industry qualified and experienced chief executive officer.  Plaintiffs allege that "[i]n mid-to-late 2018, [the Browns] … signed a document containing the above-detailed representations. These representations were false and designed to induce Plaintiffs to provide Defendants with large sums of money and business assistance."  (*Id.* at 16.)  Plaintiffs allege that Defendants knew the representations were false and that Plaintiffs reasonably relied on them.

Count 3 alleges "it is beyond dispute that Defendants entered into multiple binding oral and written contracts with Plaintiffs." (*Id.* at 17.) In exchange for these agreements, Plaintiffs provided substantial capital investments, entered into equipment leases for the benefit of Defendants, and began distribution, marketing, and sales efforts in Texas. Plaintiffs allege that "Defendants have breached all their agreements with Plaintiffs, in many ways including, but not limited to, (1) failing to hire a third-party chief executive officer, (2) appointing Defendant Debra Brown as chief executive officer, (3) failing to hire a production and delivery personnel [sic] and shift their time to local sales efforts, (4) materially impeding Plaintiffs' distribution and sales efforts in Texas, and (5) refusing to deliver stock certificates representing Plaintiffs' ownership interests in Defendant RevHoney, Inc." (*Id.* at 17.)

Count 4 alleges that the Browns, as the controlling shareholders and sole directors of RevHoney, Inc., owe Plaintiffs fiduciary duties of loyalty, care, and good faith. The Browns allegedly breached those duties by inducing Plaintiffs to invest in RevHoney under false pretenses

and for the benefit of the Browns, by engaging in various acts such as exposing RevHoney, Inc. to civil liability, failing to maintain proper records and disregarding the corporate form, and by abusing their positions to oppress Plaintiffs as minority shareholders, including by failing to issue stock certificates to Plaintiffs or make required disclosures. (*Id.* at 18-20.)

The amended complaint seeks actual and punitive damages, interest, attorney's fees and costs, an order compelling Defendants to produce corporate documents, and the appointment of a receiver to manage RevHoney, Inc.  (*Id.* at 23-26.)

## II.  Motion to Dismiss Standards

In order to withstand a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). Plausible does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Id.* (citing *Twombly*, 127 S. Ct. at 1974).

All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Plaintiff must "allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1172 (10th Cir. 2015) (internal citations omitted). As the Tenth Circuit recently observed:

> Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Carbajal v. McCann*, No. 18-1132, 2020 WL 1510047, at *3 (10th Cir. Mar. 30, 2020).

## III. Analysis

A. <u>Real party in interest</u>.  Defendants argue that revHoney Texas rather than Skipton is the real party in interest on the fraudulent inducement claim, "most of" the contract claim, and on the claims for inspection of records and appointment of receiver.  (Doc. 18 at 4.)  Defendants also assert that the real party in interest "[w]ith regard to the leases" is an entity called DES Development LLC, which is not qualified to do business in Kansas.  (*Id.*)

The Federal Rules of Civil Procedure provide that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  Defendants have not shown they are entitled to dismissal of any claims under this rule.  As an initial matter, insofar as revHoney Texas is the real party in interest on any claims, as Defendants assert, revHoney Texas is in fact named as a Plaintiff, so Defendants are not entitled to dismissal under Rule 17 for failure to prosecute the action in the name of the real party in interest.  Additionally, Defendants have failed to show that Skipton is not a real party in interest on claims such as fraudulent inducement. As Plaintiffs point out, the complaint alleges that Skipton personally loaned RevHoney, Inc. money, personally guaranteed RevHoney, Inc. obligations, and provided other consideration in reliance upon representations made by the Browns, all before revHoney Texas was formed.  Defendants have not shown Skipton is not a real party in interest insofar as the complaint alleges detrimental reliance by Skipton on the Browns' representations. As for lease agreements, the complaint alleges that "Skipton, for the benefit of RevHoney, Inc., entered into multiple long-term production and

9

bottling equipment leases—both as a guarantor and lessee," and "Skipton paid $17,320.00 in multiple cash down payments for these leases," and that Defendants agreed to assume these leases but subsequently repudiated them. (Doc. 5 at 9, 11.) Assuming the truth of these allegations, they show that Skipton is a real party in interest. The court accordingly rejects Defendants' motion to dismiss based on Rule 17.

     B. <u>Stating Fraud with Particularity</u>. Defendants argue the complaint's allegations of fraud are not stated with particularity as required by Rule 9(b). (Doc. 18 at 6.) They further assert the representations "were … not statements of fact, were not as Plaintiffs represent[,] and were subject to the integration clause of the Stock Purchase Agreement." (*Id.* at 6-7.)

     A party alleging fraud "must state with particularity" the circumstances constituting fraud. Fed. R. Civ. P. 9(b). This requires a plaintiff "to set forth the 'who, what, where, and when' of the alleged fraud." *Arena v. Wal-Mart Stores, Inc.*, 221 F.R.D. 569, 571 (D. Kan. 2004) (quoting *Nal II, Ltd. v. Tonkin*, 705 F. Supp. 522, 526 (D. Kan. 1989). At the same time, Rule 9(b) must be read together with Rule 8's "notice pleading" standard, which only requires a "short and plain" statement of the claim. *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163, 1172 (10th Cir. 2010). The overall purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based...." *Id.* (citations omitted).

     Plaintiffs' allegations of fraud and fraudulent inducement are not a model of clarity. The allegations are at times repetitive and conclusory, and the amended complaint is less than clear about the chronological order of events. Nor does the amended complaint disclose that the written "agreement" between the parties was apparently part of a document entitled "Draft Plan," which stated in part that "[t]his is not a legally binding agreement…." (Doc. 18-1 at 1.) Nevertheless, the court concludes the allegations of fraud or fraudulent inducement in the complaint are

sufficiently clear to allow Defendants to respond and to prepare their defense.  For example, the amended complaint alleges the Browns represented to Skipton that his expenses in marketing RevHoney, Inc. products would be converted to equity, that Skipton could lease equipment and real estate and rent it back to RevHoney, Inc., and that the Browns would recruit and hire a third-party industry qualified and experienced chief executive officer to run RevHoney, Inc. (Doc. 5 at 15-16.)  The amended complaint also alleges that the Browns knew these representations were false, that the representations were made to induce Skipton to invest or expends funds on behalf of the company, and that Skipton reasonably relied on the representations in providing funds to RevHoney, Inc. and incurring expenses for its benefit.  These allegations are sufficiently particular to advise Defendants of the claim.

Defendants lump in additional arguments with their Rule 9(b) argument, including that the foregoing representations cannot be a basis for fraud because they "were not statements of fact." (Doc. 18 at 6.)  But even if the statements related to acts the Browns intended to perform in the future, they could still support a claim of fraud under Kansas law.  "While it is true that fraud claims generally must relate to some material present or pre-existing fact, they can be predicated upon promises or representations regarding a future event if the circumstances tend to show that a fraudulent intent existed at the time that the promise or representation was made."  *Simmons Investments, Inc. v. Conversational Computing Corp.*, No. 09-CV-2345-EFM/KMH, 2011 WL 673759, at *6 (D. Kan. Feb. 17, 2011) (citing *Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 660, 360 P.2d 23, 26 (1961) ("If there are circumstances tending to show an actual fraudulent intent at the time the promise or representation regarding a future event is made, fraud may be predicated thereon, notwithstanding the future nature of the representations. This result is reached on the theory that a person's intention or belief is a matter of fact, and if a misrepresentation is

made with regard thereto, the misrepresentation is one of fact."). *See also Restatement (Second) of Torts* § 525 (1977) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."). The argument thus provides no basis for dismissal.

Defendants also cite what they say are stock purchase agreements between the parties and argue that integration clauses in the agreements entitle them to dismissal. (Doc. 18 at 8-10.) In support of that argument, Defendants attach various documents to their motion. The court declines to consider those attachments in deciding the instant motion.  Defendants' motion is based on Rule 12(b)(6) and challenges whether the allegations in the complaint are sufficient to state a claim for relief.  The court will not go beyond those allegations in deciding the motion. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'") (citation omitted.)

C. Breach of contract.  Defendants next assert – without any supporting argument or citation to authority – that any breach of contract claim is precluded because the "Draft Plan" document cited by Plaintiffs stated that it was "not a legally binding agreement." (Doc. 18 at 10.) But "Kansas law recognizes that … agreements can be express – that is, memorialized orally or in writing – or implied from the parties' conduct." *Straightline HDD Inc. v. Smart e-Sols., Inc*., 462 P.3d 203 (Kan. Ct. App. 2020) (citing *Lindsey Masonry Co. v. Murray & Sons Construction Co*., 53 Kan. App. 2d 505, 526, 390 P.3d 56 (2017)). *See also Care Display, Inc. v. Didde-Glaser, Inc*., 225 Kan. 232, 240, 589 P.2d 599, 606 (1979) ("A contract may be made in any manner sufficient to show agreement. It may be oral or written, or implied from the conduct of the parties.")  And

the amended complaint alleges that "Defendants entered into multiple binding oral and written contracts with Plaintiffs" under which Plaintiffs provided capital, entered into leases, and began marketing and distribution efforts in Texas.  (Doc. 5 at 17.)  In light of the fact that Kansas law recognizes that contracts may be formed in multiple ways, and the allegation that multiple agreements were made both orally and in writing, Defendants' motion fails to show that the amended complaint's allegations do not plausibly support any claim for breach of contract. Defendants also argue that any claim for breach of an agreement to deliver stock certificates belongs only to revHoney Texas, and that revHoney Texas cannot maintain this action because it is not registered to do business in Kansas. (Doc. 18 at 10.) But the "closed-door statute" [KSA 17-7307] on which Defendants apparently rely is applicable only when an entity is "doing business" in Kansas, and "[a] person shall not be deemed to be doing business in the state of Kansas solely by reason of being a member, stockholder, [or] limited partner … of a domestic covered entity…." KSA 17-7932; *Douglas Landscape & Design, L.L.C. v. Miles*, 51 Kan. App. 2d 779, 783, 355 P.3d 700, 703–04 (2015).  Plaintiff revHoney Texas is thus not barred from maintaining this action by virtue of its stock ownership in RevHoney, Inc., and the complaint does not otherwise show that revHoney Texas is doing business in Kansas. Defendants accordingly are not entitled to dismissal of the breach of contract claim.

D. Inspection of records. Defendants argue Plaintiffs' statutory claim for inspection of records fails because Skipton "never provided the written request under oath with the proper purpose."  (Doc. 18 at 11.)  In response, Plaintiffs argue they properly pleaded that they made a demand for the records and that, at any rate, case law allows a demand for inspection to be supplemented with the record from litigation.  (Doc. 20 at 11) (citing *Arctic Fin. Corp. v. OTR Exp., Inc.*, 272 Kan. 1326, 1331, 38 P.3d 701, 705 (2002)).

The amended complaint alleges that Plaintiffs made a demand for inspection of records, but it does not allege that the demand was made under oath or that it stated the purpose of the inspection.  (Doc. 5 at 14-15.) Under Kansas law, a stockholder has a right to inspect corporate records "upon written demand under oath stating the purpose thereof…."  KSA 17-6510(b). "The plain reading of the statute requires the demand to state the purpose." *Arctic Fin. Corp. v. OTR Exp., Inc*., 272 Kan. 1326, 1332, 38 P.3d 701, 705 (2002). The same is true with respect to the demand being under oath.  Plaintiffs argue that *Artic Financial* allows for supplementation of the demand in subsequent litigation to enforce the demand. But that case only allowed a shareholder to present evidence in court to show that the purpose it had identified in the demand was proper. The case did not hold that a failure to state *any* purpose in the demand letter could be excused by proof presented in a later court proceeding.  *Arctic Fin. Corp*., 272 Kan. at 1334, 38 P.3d at 706 (noting that "K.S.A. 17–6510(b) merely requires notice of a proper purpose in the demand."). Because the amended complaint does not show that a proper demand was made, the motion to dismiss this claim will be granted.

     E. <u>Breach of fiduciary duty</u>. Defendants argue this claim fails because any fiduciary duty was owed to revHoney Texas, and revHoney Texas is not registered to do business in Kansas and therefore cannot maintain an action. (Doc. 18 at 11-12.)  The court rejects this argument for reasons previously indicated. The prohibition on an unregistered foreign corporation maintaining an action in Kansas applies only to an entity "doing business" in Kansas, and investing in or owning shares of a corporation does not amount to doing business.  *See* KSA 17-7932.  Defendants have not shown they are entitled to dismissal of this claim.

G.   <u>Appointment of a receiver</u>.   Defendants argue the appointment of a receiver is not warranted on the facts alleged.  (Doc. 18 at 12-13.)  They further argue Plaintiffs are not entitled to a receiver because they are not seeking any equitable remedy.  (Doc. 18 at 13.)

 The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. *Myles v. Sapta*, 139 F.3d 912 (10th Cir. 1998) (citation omitted.) The Tenth Circuit has emphasized that the appointment of a receiver is an extraordinary equitable remedy that is only justified in extreme situations. *LPP Mortg. Ltd. v. Worldwide Christian Aid, Inc.*, 2014 WL 12495345, at *2 (D.N.M.) (citations omitted). Courts have recognized that

> [a]lthough there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are: (1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good.

*Id.* at *3 (citations omitted). *MTGLQ Inv'rs, LP v. Wellington*, No. CV 17-487 KG/LF, 2019 WL 7596227, at *2 (D.N.M. Oct. 3, 2019); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993).

Defendants' argument against appointment of a receiver assumes the absence of fraud and other wrongful acts alleged in the complaint.  For purposes of deciding the motion, however, the court is required to assume the truth of those allegations, including that Plaintiffs were fraudulently induced to invest in and expend funds on behalf of RevHoney, Inc., and that Defendants are exposing RevHoney, Inc. to unnecessary liability and the failure of its business by refusing to pay lease obligations.  The court thus finds unpersuasive Defendants' reliance on *Britton v. Green,* 325 F.2d 377 (10th Cir. 1963) to argue that no receiver can be appointed here because Plaintiffs seek no equitable remedy.  (Doc. 18 at 13.)  Plaintiffs allege that they hold an ownership interest in

RevHoney, Inc., that they were fraudulently induced to expend sums for the benefit of the company and promised that such expenditures would be converted to an ownership interest, and that Defendants' actions now threaten to dissipate the assets of the company.  Federal law recognizes that there are extraordinary circumstances where an equitable remedy may be appropriate to protect against dissipation of assets in which the plaintiff holds a valid interest. *Cf. LPP Mortg. Ltd. v. Worldwide Christian Aid, Inc.*, No. CV 14-0367 RB/CEG, 2014 WL 12495345, at *2 (D.N.M. Oct. 20, 2014) (discussing federal court's discretion to appoint receiver); *Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208, 212 (1927) ("A federal district court may, under its general equity powers independently of any state statute, entertain a bill of a stockholder against the corporation for the appointment of at least a temporary receiver in order to prevent threatened diversion or loss of assets through gross fraud and mismanagement of its officers."); § 2983 *Appointment of Receivers*, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.) ("Perhaps one of the most frequent settings in which federal equity receivers have been employed in recent years is as an incident to a stockholder suit to prevent the impairment of corporate assets.")  Such an extraordinary remedy may ultimately be inappropriate here, but Defendants have not shown that the court lacks the equitable authority under the facts alleged – assuming Plaintiffs can prove them – to appoint a receiver to protect an ownership interest thus obtained.

**IV.  Conclusion**

Defendants' motion to dismiss (Doc. 18) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Count 1 of the amended complaint alleging a right to inspection under KSA 17-6510; that claim is DISMISSED without prejudice.  The motion to dismiss is otherwise DENIED.  IT IS SO ORDERED this 30th day of June, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE